Filed 8/10/26  P. v. House CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085659 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD295694 |
| v. | |
| JOHN EDMUND HOUSE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Michael Christopher Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Donald W. Ostertag and Sahar Karimi, Deputy Attorneys General, for Plaintiff and Respondent.

John Edmund House was charged in an amended information with forcible oral copulation in violation of former Penal Code section 288a, subdivision (c)(2).[1]  The charge included an allegation that he had kidnapped the victim in the commission of the crime.  (§§ 207, subd. (a), 667.61, subds. (b), (c), (e)).  The jury found House guilty and found true the kidnapping

---

[1]    Further statutory references are to the Penal Code.

allegation. He was sentenced to 15 years to life. On appeal, House argues that the evidence was insufficient to support the true finding as to kidnapping. Resolving this matter by memorandum opinion (see generally *People v. Garcia* (2002) 97 Cal.App.4th 847), we conclude that substantial evidence supported the jury's true finding and affirm.

FACTUAL BACKGROUND

Jane Doe, the victim, testified that late in the evening on August 22, 2001, she got off the bus in Pacific Beach on the way to her boyfriend's house. She walked up the sidewalk along Fanuel Street, which she described as a street with "light traffic, light pedestrian traffic." As she walked, she heard someone following her, and then as she was about to cross an alleyway, she was grabbed from behind and a hand was placed over her mouth. She felt something poking her in the back. The person who grabbed her told her it was a knife and instructed her not to scream, because if she did, he would hurt her. He forced her to move forward into the alley, to a corner near a wood fence and a garage. He ripped down her shirt and squeezed her breasts, then told her to reach around and grab his penis. She complied. He told her to undress and she removed her skirt. He then forced her down further into the alley where it was "pretty sparsely lit" and with "no foot traffic." She testified that the alley location was "really dark, and nobody can really see you in the alleyway." He instructed her to kneel down and told her to take his penis into her mouth, and she complied for approximately one minute. He lost his erection. He then told her to get on her hands and knees, and he whipped her buttocks three times. After she told him that it hurt and tried to cover herself with her hands, he allowed her to rise and collect her belongings. He took her identification and then directed her to a house with a hose, where he told her to wash her hands and rinse her mouth out. He

2

instructed her to kneel down behind a hedge and count to 20, then he let her go and ran away.

Doe ran to her boyfriend's house and called the police. Later that evening, she underwent a sexual assault examination, which included swabbing her mouth and lips for DNA. At the time, DNA testing did not identify a suspect, but in 2022, using more advanced DNA testing, the crime lab identified House as a likely contributor to the DNA from Doe's lips. A DNA technical manager for the crime lab explained that it was three quadrillion times more likely than not to get the results that they did if House was a contributor to the DNA sample.

The jury convicted House of the single count and found true that he committed a kidnapping in the commission of the offense. The court sentenced House to 15 years to life.

## DISCUSSION

House argues on appeal that there was insufficient evidence to support the jury's true finding that he had kidnapped the victim during the offense because the evidence did not show that he moved the victim a substantial distance or that the movement decreased the likelihood of detection or increased the danger to the victim. We disagree.

The jury was instructed that in order to find true the allegation, it was required to find that using force or fear, House moved Doe or made Doe "move a substantial distance." "Substantial distance" was defined as follows:

> "*Substantial distance* means more than a slight or trivial
> distance. In deciding whether the distance was substantial,
> you must consider all the circumstances relating to the
> movement. Thus, in addition to considering the actual
> distance moved, you may also consider other factors such as
> whether the distance the other person was moved was
> beyond that merely incidental to the commission of Oral
> Copulation by Force, whether the movement increased the

3

risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, or gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection."

We review the jury's true finding for substantial evidence. (*People v. Hin* (2025) 17 Cal.5th 401, 468–469 (*Hin*).) In determining whether the distance that a victim was moved was substantial, the jury is to consider the totality of the circumstances, including the actual distance moved, "but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*People v. Martinez* (1999) 20 Cal.4th 225, 237.)

Here, Doe did not testify as to the precise distance that she was moved from Fanuel Street into the alley, but her testimony clearly established that her assailant forced her to move from a city street into the "really dark" alley, and then further down into the alley, where he forced oral copulation. But even if the actual distance that they moved could be considered a short distance, the addition of the factors noted in *Martinez* support the jury's finding.

In *Hin*, the court analyzed the *Martinez* factors that are similar here:

> "A rational trier of fact could have concluded that the victims were moved a substantial distance based on the factors articulated in *Martinez*. The movement to the bottom of the hill increased the risk of harm to the victims by isolating them from other park patrons in a more secluded area where they were less visible to others. Similarly, a rational finder of fact could have determined that the darkness decreased the likelihood of detection and enhanced defendants' opportunity to commit additional crimes." (*Hin, supra*, 17 Cal.5th at pp. 469–470.)

4

So too here.  The assailant forced Doe to move from Fanuel Street, a street with light vehicle and pedestrian traffic, into a darkened alley – and then further away from the street into the alley, where the offense occurred. The darkened alley "was less visible to others" and "decreased the likelihood of detection."

House argues that because the alley contained entrances to residences, it was "even more public" than Fanuel Street.  But even if we considered that an alley fronted in part by residences was somehow more "public" than a public street, "[c]ourts have held that moving a victim to a more isolated open area which is less visible to public view is sufficient."  (*People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1049.)  House speculates that moving Doe to the front of two residential houses would have increased the chances of his being caught, but nothing in the record supports such an inference.  The undisputed evidence demonstrated that the street was a public thoroughfare, while the alley was dark and deserted.

## DISPOSITION

Affirmed.

KELETY, J.

WE CONCUR:

O'ROURKE, Acting P. J.

BUCHANAN, J.

5